```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CENTURY SPORTS, INC. and                    MEMORANDUM & ORDER
MILLENNIUM PRODUCTS GROUP, LLC,             19-CV-4842(JS)(ARL)

                        Plaintiffs,

        -against-

ROSS BICYCLES, LLC, RANDY ROSS, and
SHAUN ROSS,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Todd Wengrovsky, Esq.
                    285 Southfield Road, P.O. Box 585
                    Calverton, New York 11933

For Defendants:     Gerald D. Grunsfeld, Esq.
                    Lazar Grunsfeld Elnadev LLP
                    1795 Coney Island Avenue
                    Brooklyn, New York 11230
```

SEYBERT, District Judge:

Plaintiffs Century Sports, Inc. ("Century") and Millennium Products Group, LLC ("Millennium") (collectively, "Plaintiffs") commenced this action against defendants Ross Bicycles, LLC ("RBL"), Randy Ross, and Shaun Ross (collectively, "Defendants"), asserting claims for trademark infringement and unfair competition arising out of the registration and use of the "ROSS" trademark (the "Mark"). (See Second Am. Compl., ECF No. 19.) Defendants have moved to dismiss this action on three grounds: (1) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (2) lack of personal jurisdiction under

Federal Rule of Civil Procedure 12(b)(2); and (3) improper venue under to Federal Rule of Civil Procedure 12(b)(3). (Mot., ECF No. 20; Defs. Br., ECF No. 20-10; Reply, ECF No. 22.) Plaintiffs oppose the motion. (Pls. Opp., ECF No. 21.) For the reasons set forth below, Defendants' Motion is GRANTED and the Second Amended Complaint is DISMISSED for lack of personal jurisdiction.

BACKGROUND AND PROCEDURAL HISTORY[1]

I.   The Parties

RBL is a "limited liability company organized and existing under the laws of the State of Delaware, with an address" in Nevada. (Second Am. Compl. ¶ 5.) Defendants Randy Ross, a Florida resident, and Shaun Ross, a Nevada resident, own RBL. (Randy Ross Decl. ("R. Ross Decl."), ECF No. 20-8, ¶¶ 3-4; Shaun Ross Decl. ("S. Ross Decl."), ECF No. 20-9, ¶¶ 3-4.) Century and Millennium are limited liability companies organized under the laws of the State of New York. (Second Am. Compl. ¶¶ 3-4.) Millennium is a "well-known importer and distributor of consumer goods, including toy items and sporting goods items, specifically bicycles and bicycle accessories." (Id. ¶ 10.)

---

[1] The following facts are drawn from the Second Amended Complaint and the parties' submissions, including filings and orders from the underlying Trademark Trial and Appeal Board proceeding, as appropriate. See Santos v. Hecht, No. 06-CV-0783, 2006 WL 2166850, at *1 n.1 (E.D.N.Y. July 31, 2006) (taking judicial notice "of the underlying records of the TTAB proceeding, attached to" motion papers). "The facts are construed in a light most favorable to plaintiff, the non-moving party." Id.

II. The "ROSS" Mark and the Events Giving Rise to This Action

In 1946, Randy and Shaun Ross's grandfather and great grandfather, respectively, formed Chain Bike Corporation ("CBC"), a family-owned and operated company that produced bicycles under the brand name "ROSS". (R. Ross Decl. ¶¶ 6-7.) On March 26, 1974, CBC registered the "ROSS" trademark (the "Mark") with the United States Patent and Trademark Office ("USPTO") for "BICYCLES AND STRUCTURAL PARTS THEREOF, in CLASS 19". (Second Am. Compl., Ex. A, ECF No. 19-1.) CBC later changed its name to Ross Bicycles, Inc. ("RBI"). (R. Ross Decl. ¶ 9.) After RBI filed for bankruptcy protection in 1989, Rand Corporation ("Rand") acquired RBI and the Mark. (Id. ¶ 11.) Rand sold bicycles under the ROSS brand name until it filed for bankruptcy protection in 2010. (Id. ¶ 12.) As relevant here, in 2013, Century acquired the Mark and authorized Millennium to use the Mark in commerce. (R. Ross Decl. ¶ 13; Second Am. Compl. ¶ 12.)

On March 24, 2014, Century filed Section 8 and Section 9 declarations under the Trademark Act to renew the Mark's registration to 2024. (Second Am. Compl. ¶ 13; Second Am. Compl., Ex. B, ECF No. 19-2.) According to Defendants, Century made "no effort to resume sales of Ross-branded bikes or to use the Ross [Mark] in commerce" after acquiring the Mark. (R. Ross Decl. ¶ 12.) Thus, in 2017, Shaun and Randy Ross formed RBL to produce and sell Ross-branded bicycles. (R. Ross Decl. ¶¶ 14-15.)

3

III. <u>The TTAB Proceeding and this Action</u>

On November 6, 2017, RBL filed an "Intent to Use" trademark application with the USPTO to register the "ROSS" Mark in connection with bicycles that RBL produces for sale. (R. Ross Decl. ¶ 15; Intent to Use App., Grunsfeld Decl., Ex. A, ECF No. 20-2.) On November 7, 2017, RBL filed a "Petition for Cancellation" with the USPTO's Trademark Trial and Appeal Board ("TTAB") to cancel the "ROSS" Mark owned by Century on the ground that Century abandoned the Mark (the "TTAB Proceeding"). (TTAB Petition, Grunsfeld Decl., Ex. B, ECF No. 20-3; Second Am. Compl. ¶ 14.) Century opposed the petition and the parties engaged in discovery and motion practice before the TTAB. (Grunsfeld Decl., ECF No. 20-1, ¶¶ 4-5.)

As the TTAB Proceeding was ongoing, Plaintiffs commenced this action on August 23, 2019, alleging that Defendants' use of the Mark constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 <u>et seq.</u> (the "Lanham Act"). (Compl., ECF No. 1, ¶¶ 30-38.) By November 4, 2019, the parties had submitted their trial briefs in the TTAB Proceeding. (RBL Trial Br., Grunsfeld Decl., Ex. D, ECF No. 20-5; Century Trial Br., Grunsfeld Decl., Ex. E, ECF No. 20-6.) Thereafter, in this action, Plaintiffs filed an Amended Complaint on December 5, 2019, alleging trademark infringement and unfair competition in violation of the Lanham Act. (Am. Compl., ECF No. 12, ¶¶ 35-52.) On March 27,

4

2020, the TTAB granted RBL's petition to cancel Century's registration of the Mark. (TTAB Decision, Grunsfeld Decl., Ex. F, ECF No. 20-7.) Specifically, the TTAB found that RBL "established a prima facie case of abandonment based on [Century's] nonuse of the [Mark] for 'bicycles and structural parts thereof' since at least [Century's] acquisition of the mark" to when RBL initiated the TTAB Proceeding. (Id. at 14.) The TTAB then determined that "[t]he record does not support a finding that [Century] acted in a way reasonable for business with a bona fide intent to use the [M]ark" and thus, did not rebut the presumption of abandonment. (Id. at 17-18.) Century did not appeal the TTAB decision.

In light of the TTAB decision, on April 27, 2020, this Court denied Defendants' motion to stay and directed Defendants to respond to the Amended Complaint. (Apr. 27, 2020 Elec. Order.) On July 16, 2020, Plaintiffs filed a Second Amended Complaint, alleging two causes of action for trademark infringement and unfair competition in violation of the Lanham Act. (Second Am. Compl. ¶¶ 40-56.) The Second Amended Complaint alleges that Defendants are infringing on Plaintiffs' "ROSS" Mark by using an identical "ROSS" Mark to sell bicycles. (Id. ¶¶ 16-31.)

DISCUSSION

Defendants have moved to dismiss Plaintiffs' claims under Rule 12(b)(2), for lack of personal jurisdiction, Rule 12(b)(6), for failure to state a claim, and Rule 12(b)(3), for improper venue. The Court first considers the jurisdictional challenge.

I. Rule 12(b)(2) Legal Standard

To survive a motion to dismiss "for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 167-68 (2d Cir. 2015) (citation omitted); Troma Entertainment, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." (citation omitted)). As a result, "a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'" Id. (quoting Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 35 (2d Cir. 2010)). "In evaluating whether the requisite showing has been made, the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Hillel v. Obvio Health USA, Inc., No. 20-CV-4647, 2021 WL 229967, at *3 (S.D.N.Y. Jan. 21, 2021) (internal quotation marks and citation omitted). "The

6

Court will not, however, 'draw argumentative inferences in the plaintiff's favor' or 'accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001), 714 F.3d 659, 673 (2d Cir. 2013)).

II. Rule 12(b)(2) Discussion

When considering a motion to dismiss for lack of personal jurisdiction, the Court conducts a two-step inquiry.  First, the court decides "whether there is a statutory basis for exercising personal jurisdiction and" second, "whether the exercise of jurisdiction comports with due process." George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd., No. 20-CV-2626, 2021 WL 168930, at *3 (S.D.N.Y. Jan. 18, 2021) (quoting BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 349-50 (S.D.N.Y. 2014) (cleaned up)).  "There are two varieties of personal jurisdiction: specific and general." Kerman v. Intercontinental Hotels Grp. Res. LLC, No. 20-CV-1085, 2021 WL 930253, at *3 (E.D.N.Y. Mar. 11, 2021).  "Specific jurisdiction is that which 'aris[es] out of or [is] related to the defendant's contacts with the forum.' . . . General jurisdiction, on the other hand, exists where the defendant's 'general business contacts with the forum' are so extensive or exceptional as to 'permit[] a court to exercise its power in a case where the subject matter of the suit is

7

unrelated to those contacts.'" Id. (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996)).

Here, the Second Amended Complaint alleges the Court has personal jurisdiction over Defendants based on their "transact[ing] business in the State of New York and this District," and "commit[ing] tortious acts within the State, and/or without the State causing injury within the state." (Second Am. Compl. ¶ 1). Defendants argue that they are not subject to jurisdiction in New York because, among other reasons, they do not reside in the State, have not contracted with any persons or entities in the State, and they have not sold or shipped any goods or services to customers in the State. (Defs. Br. at ECF pp. 4-6.) Plaintiffs respond that Defendants are subject to general jurisdiction pursuant to N.Y. C.P.L.R. § 301 ("Section 301") (Pls. Opp. at 9-10) and specific jurisdiction pursuant N.Y. C.P.L.R. § 302(a)(1) ("Section 302(a)(1)") (id. at 10-11). For the reasons that follow, neither general nor specific jurisdiction exist in this case.

A. General Jurisdiction

"Under N.Y. C.P.L.R. § 301, a court in New York may exercise general jurisdiction over an out-of-state defendant if the defendant 'engaged in continuous, permanent, and substantial activity in New York.'" George Moundreas, 2021 WL 168930, at *4 (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d

8

Cir. 2000)) (internal quotation marks omitted). "The paradigmatic forums where a corporate defendant is essentially at home are 'where it is incorporated' and where it 'has its principal place of business.'" Kerman, 2021 WL 930253, at *5 (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). "'Only in the "exceptional" case will' a corporate defendant be essentially at home in any other jurisdiction." Id. (quoting Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016)) (further citations omitted).

Here, RBL is a "limited liability company organized and existing under the laws of the State of Delaware, with an address" in Nevada. (Second Am. Compl. ¶ 5.) However, the Second Amended Complaint alleges the Court has personal jurisdiction over Defendants based on their "transact[ing] business in the State of New York and this District," and "commit[ing] tortious acts within the State, and/or without the State causing injury within the state." (Second Am. Compl. ¶ 1.) These allegations are insufficient to establish that Defendants are "essentially at home" in New York. See Kerman, 2021 WL 930253, at *5 (finding allegations that the defendant is "authorized to do business in the State of New York" and "has a 'massive presence'" in the state did "not elevate Defendant's relationship with New York to the level of 'essentially at home'" where the plaintiff did not contend the defendant's "operations were directed from New York").

9

Further, Plaintiffs argue that RBL's website is "sufficiently interactive to warrant jurisdiction" because it is "of a 'two-way' style, one that provided a 'Show Now' feature and means for direct electronic communications." (Pls. Opp. at 9; Second Am. Compl. ¶¶ 19-20.) The Court disagrees. "While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would have been none, . . . , in all such cases, unlike here, the plaintiff first established some further contact with the forum state." Rosenberg v. PK Graphics, No. 03-CV-6655, 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) (citing Citigroup v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000)). Indeed, Plaintiffs allege only that "Defendants' website is interactive and accessible to anyone in the country." (Second Am. Compl. ¶ 20.) However, in support of their motion, Defendants affirm that while the website contains a "Shop Now" button (see Second Am. Compl. ¶ 20), the "Shop Now" button directs customers to a "Contact Us" forum and does "not give the customer the opportunity to" place a purchase (see R. Ross Decl. ¶ 19; S. Ross Decl. ¶ 19). Accordingly, the Court finds that Defendants' website does not "reach a level of interactivity amounting to doing business" under Section 301. See Rosenberg, 2004 WL 1057621, at *2 (finding the defendants' website did not confer general jurisdiction because it did not "allow visitors to complete a purchase by paying online" and noting that "some further

10

contact must be made either by defendants or by the customer -- using media such as email, facsimile, and the telephone -- to clarify or finalize terms and/or arrange for payment").

Therefore, the Court lacks general jurisdiction over Defendants.[2]

B. Specific Jurisdiction[3]

1. Section 302(a)(1)

Plaintiffs argue that Section 302(a)(1) provides an alternative basis for personal jurisdiction because Defendants engaged in "specific transactions with parties in New York." (Pls. Opp. at 10.) As relevant here, New York's Long Arm Statute allows a New York court to exercise personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." See N.Y. C.P.L.R. § 302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York

---

[2] Defendants Randy Ross and Shaun Ross are similarly not subject to general personal jurisdiction pursuant to Section 301. "They are [both] foreign individuals that do not systematically and continuously do business in New York, and Plaintiff[s do not allege or] argue otherwise. Further, individuals acting on a corporation's behalf are not subject to general personal jurisdiction under Section 301." Giuliano v. Barch, No. 16-CV-0859, 2017 WL 1234042, at *5 (S.D.N.Y. Mar. 31, 2017).

[3] Because Plaintiffs invoke Sections 302(a)(1) and 302(a)(3)(ii) to support specific personal jurisdiction, the Court's analysis focuses only on those provisions. (See Pls. Opp. at 10-11.)

11

and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007).

As a preliminary matter, the Second Amended Complaint is devoid of any allegations that Defendants Randy Ross and Shaun Ross transacted business in New York. On this basis, the Court concludes that it lacks personal jurisdiction over these individual Defendants under Section 302(a)(1). See Giuliano, 2017 WL 1234042, at *7-10.

Turning to the merits, Plaintiffs first argue that specific jurisdiction exists under Section 302(a)(1) because Defendants solicited investors in New York. (Pls. Opp. at 10-11.) Assuming, without deciding, that the alleged solicitation of a single investor in New York satisfies the "transacting business" prong, there are no allegations that Plaintiffs' trademark infringement and unfair competition claims arise out of this activity. See Stroud v. Tyson Foods, Inc., 91 F. Supp. 3d 381, 389-90 (E.D.N.Y. 2015) (collecting cases). "Absent such a showing, there is no authority to exercise personal jurisdiction over non-domiciliary defendants under Section 302(a)(1)." Id.

To the extent asserted, the Court rejects Plaintiffs' second argument that RBL's website is a "highly interactive website" that confers jurisdiction under Section 302(a)(1). "It is true that a defendant's operation of a website can sometimes

12

support personal jurisdiction under § 302(a)(1)." Sullivan v. Walker Constr., Inc., No. 18-CV-09870, 2019 WL 2008882, at *2 (S.D.N.Y. May 7, 2019) (citation omitted). However, "[e]ven the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006); Sullivan, 2019 WL 2008882, at *2 (collecting cases); Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC, No. 15-CV-6478, 2016 WL 7451306, at *2 (S.D.N.Y. Dec. 27, 2016) (noting that "[a] website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)" (citations omitted)); Savage Universal Corp. v. Grazier Const., Inc., No. 04-CV-1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) ("It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred.").

Here, "Plaintiff[s] ha[ve] not alleged a reasonable probability that [Defendants'] website has been 'actually used to

13

effect commercial transactions with customers in New York.'" Sullivan, 2019 WL 2008882, at *2 (quoting M. Shanken Commc'ns, Inc. v. Cigar500.com, No. 07-CV-7371, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008)).  Indeed, as stated, the Second Amended Complaint alleges only that "Defendants' website is interactive and accessible to anyone in the country."  (Second Am. Compl. ¶ 20.)  Defendants attest that they have not conducted any business in New York and have not sold and/or shipped any ROSS-branded bicycles to New York.  (See R. Ross Decl. ¶¶ 18-26; S. Ross Decl. ¶¶ 18-26.)  Moreover, as stated above, while the website contains a "Shop Now" button, it directs customers to a "Contact Us" forum and does "not give the customer the opportunity to" place a purchase. (See R. Ross Decl. ¶ 19; S. Ross Decl. ¶ 19.)  Plaintiffs do not address or dispute these representations.  As such, the Court finds that Defendants' website is "passive,"[4] as opposed to "highly interactive," and is "insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York." Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc., No. 17-CV-4377, 2018 WL 1832930, at *6 (E.D.N.Y. Apr. 17, 2018) (quoting Zibiz Corp. v.

---

[4] The Court adopts the definition of a "passive website" as one that "only provides information about an item for sale and contact information for the seller, without any ability to directly purchase the items through the website. . . ." Ye Olde Time Keepers, 2018 WL 1832930, at *6.

14

FCN Tech. Sols., 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011)) (further citations omitted). Therefore, Defendants "did not transact business in New York State under the meaning of § 302(a)(1) due to the nature of [their] website." Id.

Finally, Plaintiffs argue that Defendants are subject to jurisdiction under Section 302(a)(1) because they "undoubtedly included New York entities in their national promotional campaign, particularly to retailers located here." (Pls. Opp. at 11.) This allegation is entirely speculative and insufficient to confer personal jurisdiction over Defendants. See ISI Brands, 458 F. Supp. 2d at 89 (declining to exercise jurisdiction under Section 302(a)(1) in part where the plaintiff claimed that "it seems probable" that the defendant shipped orders into this District and "[w]hatever speculations or hopes plaintiff may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery" (quoting Rosenberg, 2004 WL 1057621, at *1)).

Accordingly, Plaintiffs have not made a prima facie showing that jurisdiction over Defendants is proper pursuant to Section 302(a)(1).

2. Section 302(a)(3)(ii)

The Court recognizes that Plaintiffs also argue that Defendants could "reasonably foresee[] that their business model

15

and website would have consequences in New York" to support a finding of general jurisdiction. (See Pls. Opp. at 10.) Whether Defendants could have "reasonably foreseen" consequences in New York is more appropriately considered when analyzing specific jurisdiction pursuant to Section 302(a)(3)(ii). In any event, personal jurisdiction does not exist under Section 302(a)(3)(ii) because Plaintiffs failed to plausibly plead that Defendants "discernibly attempted to serve the New York market." Aaron Consulting Co. v. Snap Sols. LLC, No. 16-CV-6775, 2018 WL 4568800, at *7 (E.D.N.Y. Sept. 24, 2018). Here, the Second Amended Complaint alleges that "Defendants are marketing products under the ROSS name nationally, including to the northeastern United States" and "Defendants' website is interactive and accessible to anyone in the country." (Second Am. Compl. ¶¶ 19-20.) These conclusory allegations cannot support personal jurisdiction under Section 302(a)(3)(ii). Aaron Consulting Co., 2018 WL 4568800, at *7 (noting, among other things, the "only connection between [the defendant's] websites and New York is that the websites can be viewed by users in New York with an internet connection" and concluding the complaint's "conclusory" allegations, that the defendant "purposefully solicits customers in New York" and "directly advertises New York based events to New York customers," could not support personal jurisdiction under Section 302(a)(3)(ii)).

16

"Having found that there is no statutory basis for personal jurisdiction under New York's long-arm statute, the Court need not consider the next step of analyzing whether jurisdiction comports with due process." In re Dental Supplies Antitrust Litig., No. 16-CV-0696, 2017 WL 4217115, at *8 (E.D.N.Y. Sept. 20, 2017). Moreover, given that there is no personal jurisdiction over Defendants, the Court does not consider the parties' remaining arguments. See George Moundreas, 2021 WL 168930, at *1 (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' Motion (ECF No. 20) is GRANTED and this case is DISMISSED without prejudice for lack of personal jurisdiction. The Clerk of the Court is respectfully directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March  23 , 2021
         Central Islip, New York